UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FREMONT INVESTMENT & LOAN, a California Industrial Bank, <br><br> Plaintiff, <br><br> v. <br><br> BECKLEY SINGLETON, CHTD., a Nevada Professional Corporation; and SIDNEY R. BAILEY, an individual, <br><br> Defendants. | 2:03-CV-1406-PMP-RJJ <br><br> <u>O R D E R</u> |

On December 20, 2006, this action was reassigned to this Court for all further proceedings. (Min. Order in Chambers, Doc. #222.) Presently before the Court is Plaintiff Fremont Investment & Loan's Motion for Leave to File Supplemental and First Amended Complaint (Doc. #210), filed on September 5, 2006. On February 9, 2007, Defendants filed an Opposition (Doc. #226). Plaintiff filed a Reply (Doc. #227) on February 16, 2007.

**I.     BACKGROUND**

This case involves a dispute over the disbursement of Letter of Credit Proceeds. Plaintiff Fremont Investment & Loan ("Fremont") alleges Defendant Beckley Singleton, Chtd. ("Beckley"), the law firm representing Defendant Sidney Bailey ("Bailey") in a bankruptcy action, was supposed to hold certain Letter of Credit Proceeds in trust pursuant to a court order until the court could determine who was entitled to the money. Instead of holding the Proceeds in trust, however, Defendants allegedly disbursed the Proceeds to themselves and others despite their knowledge of Fremont's superior claims to the Proceeds.

**A.  The Florida Loan and Letter of Credit Transactions**

According to the Complaint, on February 25, 1998, an entity named U.S. Development entered into a contract for the sale and purchase of certain real property located in Miami Beach, Florida (the "Property").  (Compl. at 3.)  On March 11, 1999, U.S. Development, as landlord and purchaser of the Property, entered into a ten-year lease with Baywatch Café as tenant (the "Baywatch Lease").  (Id.)  Baywatch Café is affiliated with an entity known as Club in which Defendant Bailey is substantially involved.  (Id. at 4.)  Under Section 44 of the Baywatch Lease, the lease's effectiveness was conditioned on U.S. Development's transfer of the Property to entities affiliated with U.S. Development.  (Id.)  U.S. Development satisfied the Baywatch Lease's condition by executing a General Assignment to one of its affiliates called Shops at Ocean Court, Ltd. ("Shops").  (Id.)  The Complaint alleges the General Assignment transferred to Shops all of U.S. Development's interest in the Baywatch Lease, as well as its interests in a Letter of Credit and its Proceeds, which is the subject of this litigation, and all other leases, contracts, rights, and personal property pertaining to the Property.  (Id.)

On August 19, 1999, Sun West Bank of Las Vegas, Nevada issued at Club's request an Irrevocable Letter of Credit for an amount not to exceed $325,000 for the benefit of the landlord under the Baywatch Lease.  (Id. at 4.)  The Letter of Credit states that its Proceeds represent the security deposit for the Baywatch Lease and that it may be drawn down by the "Beneficiary as Landlord" up to the full amount upon any breach by the Baywatch Lease's tenant.  (Id.)  The Complaint claims that although the Letter of Credit names U.S. Development as the beneficiary, U.S. Development was no longer the landlord under the Baywatch Lease at the time Sun West Bank issued the Letter of Credit because of the General Assignment to Shops.  (Id.)  Accordingly, the Complaint alleges that because Shops was the landlord under the Baywatch Lease at the time the Letter of Credit was issued, Shops was the real party in interest and beneficiary of the Letter of Credit.  (Id.)

2

Plaintiff Fremont Investment & Loan ("Fremont") loaned Shops the funds to complete the purchase of the Property. (Id. at 4-5.) Fremont's loan to Shops was secured by two mortgages, fixture filings, and a UCC-1 financing statement, which were all recorded in Florida, as well as assignments of rent and leases (the "Loan Documents"). (Id. at 5.) Shops also assigned the Baywatch Lease to Fremont. (Id. at 5-6.) Fremont avers that by executing and delivering the Loan Documents to Fremont, Shops pledged all of its assets, tangible and intangible, including the Baywatch Lease, the Letter of Credit and Proceeds, to Fremont as security for the repayment of the loan. (Id. at 5-6.) Fremont also alleges that Shops' assignment of the Baywatch Lease to Fremont means that Shops also assigned all of its rights, title, and interests in the Letter of Credit and Proceeds to Fremont. (Id. at 6.)

**B. The Koniver Judgment & Bankruptcy Actions**

On August 23, 2000, Club filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Nevada. (Id.) Fremont alleges that on January 8, 2001, U.S. Development attempted to draw or actually drew on the Letter of Credit. (Id.) Thereafter, Club, Bailey, and a Joel Matta, M.D., ("Matta") filed an adversary action in the Nevada Bankruptcy Court to enjoin U.S. Development from drawing on the Letter of Credit and to obtain a determination concerning entitlement to the Proceeds. (Id.) On January 12, 2001, the Nevada Bankruptcy Court heard the application for preliminary injunction but denied Club, Bailey, and Matta's request to enjoin U.S. Development's draw on the Letter of Credit. (Id.) Defendant Beckley Singleton Chtd. ("Beckley") represented Bailey at the hearing. (Id.)

The Nevada Bankruptcy Court also ordered that the Proceeds be protected in one of three ways: (i) deposit the Proceeds in the Clerk's Registry of the Nevada Bankruptcy Court; (ii) deposit the Proceeds in a joint bank account where no one could have access to the Proceeds until the Bankruptcy Court ordered otherwise; or (iii) place the Proceeds with

Sun West Bank to obtain a replacement of the Letter of Credit with a new letter of credit on the same terms, same conditions and for a minimum further period of ninety days. (Id. at 7-8.) Counsel for U.S. Development, Greenberg Traurig, and counsel for Defendant Bailey, Defendant Beckley, agreed they "would deposit the funds in Ms. Thomas' [i.e. Beckley's] escrow account until your Honor rules where it should be." (Id.)

According to the Complaint, the Nevada Bankruptcy Court entered an Order Approving a Stipulation for Deposit of Letter of Credit Funds in the Adversary Action, under which "the parties proposed to wire transfer the Letter of Credit Proceeds to a Trust Account established by the firm of Greenberg, Traurig" and that "Greenberg Traurig, as escrow agent, shall exercise control over the funds and the escrow account as an officer of the Court in this case." (Id.) The Court ordered that "the funds may not be pledged, hypothecated, drawn upon or used in any manner by any party until the party's interest in the funds is determined by order of the Court." (Id.) Fremont alleges, despite the Order's clear language, neither party ever transferred the Letter of Credit Proceeds to a trust account established by Greenberg Traurig. (Id.) Instead, Fremont avers Beckley and Bailey retained the Proceeds in a bank account under Beckley's control. (Id.)

On February 1, 2001, a judgment in the amount of approximately $560,000 was entered in favor of Koniver Stern Group, Inc. ("Koniver"), against U.S. Development and Shops. (Id.) On October 11, 2001, Koniver petitioned the Eighth Judicial District Court of Nevada to domesticate the Koniver judgment, which the court granted. (Id. at 7.)

On March 29, 2001, Fremont declared Shops in default on the loan. (Id.) On April 6, 2001, Fremont commenced a judicial mortgage foreclosure proceeding in the Circuit Court in Miami-Dade County, Florida seeking to enforce its rights as a secured party against the Property and other collateral for the loan, including the Baywatch Lease, Letter of Credit, and Proceeds. (Id.) On April 24, 2001, Shops filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Florida ("Florida

4

Bankruptcy Court"), which stayed Fremont's judicial foreclosure. (Id.) On January 22, 2002, the Florida Bankruptcy Court granted Fremont complete relief from the automatic stay. (Id.) At the clerk's foreclosure sale held on July 1, 2002, Fremont purchased the Property. (Id.) Fremont alleges its purchase of the Property "eliminated any and all vestiges of Shops' already-encumbered interests in or rights to the Baywatch Lease, Letter of Credit and Proceeds." (Id.)

On June 1, 2001, U.S. Development filed a motion for summary judgment in the Nevada Bankruptcy Court, which the Court granted determining U.S. Development was entitled to draw on the Letter of Credit. (Id. at 9-10.) Shortly after the Nevada Bankruptcy Court entered its order granting U.S. Development's motion for summary judgment, Koniver filed a motion to intervene. (Id. at 10.) Around this same time, Beckley contacted Fremont and advised that Fremont should come forward and assert its claims to the Proceeds. (Id.) The Nevada Bankruptcy Court granted Koniver's motion to intervene and issued a stay on the disbursement of the Proceeds pending further order of the court and ordered any other claimants to the Proceeds to present their claims by October 26, 2001. (Id.) Fremont claims that on October 26, 2001, it timely filed and served on Defendants its Notice of Claim and Claim to Letter of Credit Proceeds and Request to Transfer Funds to the Registry of the Florida Bankruptcy Court. (Id.) Koniver also timely filed a claim to the Proceeds. (Id.) Fremont alleges on May 9, 2002, "Koniver assigned all of its rights or claims in and to the Proceeds to Fremont, except Koniver retained the right to pursue any Proceeds awarded to and/or delivered to U.S. Development." (Id. at 11.) Thus, according to Fremont, its rights to the Proceeds arise from its original rights under the Loan Documents and the assignment of independent rights from Koniver. (Id.)

On October 31, 2001, the Nevada Bankruptcy Court conducted a hearing on Club's motion to reconsider the court's order granting U.S. Development's motion for summary judgment. (Id.) At the hearing, the court continued the stay on disbursement of

5

the Proceeds and ordered the funds to be transferred to the Clerk of the Florida Bankruptcy Court.  (Id.)  On November 13, 2001, the Nevada Bankruptcy Court issued an order stating "all efforts to obtain possession and control of the Funds are hereby STAYED pending further order of the Court and . . . IT IS FURTHER ORDERED that any person wishing to claim an interest in the funds shall file a pleading asserting their claim . . . ."  (Id. at 12.)  Fremont alleges the Nevada Bankruptcy Court never dissolved its order staying disbursement of the Proceeds.  (Id.)

### C. Disbursement of the Letter of Credit Proceeds

On December 10, 2001, Beckley, on behalf of Bailey, sought appellate review from the United States District Court for the District of Nevada regarding the Nevada Bankruptcy Court's order granting summary judgment and order denying the motion to reconsider.  (Id.)  On December 18, 2001, Club filed a Notice of Conversion of Debtor's Chapter 11 Bankruptcy Case to Chapter 7.  (Id. at 13.)  According to the Complaint, Club did not serve the notice of conversion on Fremont, Koniver, or any other party.  (Id.)  Fremont alleges the notice of conversion drew no response from the Nevada Bankruptcy Court or the Office of the United States Trustee as no trustee was ever appointed, no new 341(a) first meeting ever took place, and none of the other consequences of conversion to Chapter 7 occurred.  (Id.)

On January 7, 2002, the Nevada Bankruptcy Court conducted a Chapter 11 status conference but none of the parties appeared.  (Id.)  Consequently, the Nevada Bankruptcy Court set an order to show cause regarding dismissal of the Chapter 11 case for March 12, 2002.  (Id.)  Fremont claims the certificate of mailing for the court's order setting the dismissal hearing was served only on the Office of the United States Trustee and the debtor, Club.  (Id.)  Fremont alleges notwithstanding the noticing requirements of Federal Rule of Bankruptcy Procedure 2002(a)(4), notice was not served on creditors or anyone else.  (Id.)

According to the Complaint, the Nevada Bankruptcy Court dismissed the

6

bankruptcy case after conducting the order to show cause hearing.  (Id. at 14.)  Fremont alleges the order dismissing the case was served on a variety of parties, but not Fremont, Koniver, or their counsel.  (Id.)  Further, Fremont claims that after the dismissal order was entered and notwithstanding the "conversion" to Chapter 7, the Nevada Bankruptcy Court entered an order in favor of Jones Vargas for $18,717.35 to satisfy an attorney's lien, and ordered that it "may be satisfied from the letter of credit proceeds . . . ."  (Id.)  Freemont alleges the court's order in favor of Jones Vargas was the only distribution of Proceeds the court authorized.  (Id. at 12.)

Fremont alleges that sometime between March 2002 and July 2002, Club and U.S. Development settled Club's appeal.  (Id. at 14.)  Fremont did not receive notice of the settlement of the appeal.  (Id.)  Around July 9, 2002, Beckley wire transferred $46,500 to the bank account of U.S. Development's counsel, Greenberg Traurig.  (Id.)  Beckley subsequently withdrew Bailey's then-pending appeal before this Court.  (Id.)  Further, Fremont avers both before and after the dismissal of the appeal, "Beckley disbursed all of the remaining Proceeds of the $325,000 Letter of Credit to Bailey, itself and others."  (Id.)  Fremont claims it was not notified of Defendants' actions until late January 2003.  (Id.)

On May 30, 2003, Fremont filed motions with the Nevada Bankruptcy Court seeking to reopen Club's bankruptcy case and requesting the Nevada Bankruptcy Court to administer the Letter of Credit Proceeds according to its previous orders.  (Id. at 15.)  On July 8, 2003, the Nevada Bankruptcy Court denied Fremont's motions to reopen Club's case and found that Club "has no interest in the Letter of Credit Proceeds referenced in the motion . . . ."  (Id.)  According to the Complaint, Fremont sought an accounting from Beckley and Bailey of the disposition of the Letter of Credit Proceeds and the return of the Letter of Credit Proceeds in excess of the amounts authorized to be disbursed by the Nevada Bankruptcy Court.  (Id.)  Fremont claims Defendants refuse to pay any portion of the Letter of Credit Proceeds to Fremont or to identify the recipients of the Proceeds.  (Id.)

7

On November 13, 2003, Fremont filed suit against Defendants seeking declaratory relief and claiming negligence, conversion, breach of contract, an accounting, constructive trust, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Fremont now moves to supplement and amend its Complaint to formally add a breach of fiduciary duty claim and to add allegations based upon transactions, occurrences, or events that have happened since the date Fremont filed its Complaint. Defendants oppose Fremont's motion to supplement and amend its Complaint, contending that granting the motion would cause undue delay and prejudice to Defendants.

## II. DISCUSSION

### A. Motion to Amend

Fremont seeks to "formally amend the complaint" under Federal Rule of Civil Procedure 15(a) to add a breach of fiduciary duty claim against Beckley and to request punitive damages. Defendants oppose Fremont's motion to amend arguing discovery ended in March 2006 and any amendments would cause undue delay and prejudice to Defendants.

Where a party seeks to amend a pleading after the pretrial scheduling order's deadline for amending the pleadings has expired, the moving party must satisfy the stringent "good cause" standard under Federal Rule of Civil Procedure 16, not the more liberal standard under Rule 15(a). Amerisource Bergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 952 (9th Cir. 2006); see also Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992) (noting once a district court files a pretrial scheduling order under Federal Rule of Civil Procedure 16 establishing a timetable for amending pleadings, that rule's standards control). Unlike Rule 15(a)'s relaxed amendment policy, which focuses on undue delay and prejudice to the other party, Rule 16(b)'s "good cause" standard centers on the moving party's diligence. Johnson, 975 F.2d at 609. A "district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" Id. (quoting Fed. R. Civ. P. 16 advisory committee's note (1983

8

amendment)). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Id.  If the moving party is able to satisfy the good cause standard under Rule 16, then the Court will examine whether the amendment is proper under Rule 15(a). Id. at 607-08.

The Stipulated Discovery Plan and Scheduling Order in this case states: "In accordance with Local Rule 26-1(e)(4), the parties agree to file motions to amend the pleadings or to add parties no later than 90 days prior to the close of discovery." (Order [Doc. #30], at 3.)  The original discovery cutoff date was July 5, 2004, which meant Fremont was supposed to file any motions to amend the pleadings by April 6, 2004. However, due to a number of stipulations and motions requesting extensions to the discovery cutoff date, the discovery period was extended to March 3, 2006.  (Mins. of Proceedings [Doc. #82].)  Accordingly, under the Scheduling Order, Fremont was required to file any motions to amend the pleadings before December 3, 2005.  Fremont filed its motion to amend the complaint as part of its opposition to Beckley's motion for summary judgment on April 21, 2006, approximately twenty months after the original deadline for filing motions to amend expired and almost five months after the extended deadline expired.  Consequently, because Fremont seeks to amend its Complaint after the Scheduling Order's deadline for amending pleadings expired, it must meet the more stringent good cause standard under Rule 16.

Fremont has not met the good cause standard to modify the Scheduling Order because it has not shown the requisite diligence.  The stipulated Scheduling Order originally provided for 180 days to conduct discovery.  At no time during the original discovery period did Fremont seek leave to amend its Complaint.  The parties also stipulated and filed various motions to extend the discovery cutoff date and related deadlines, which increased the discovery period an additional twenty months.  Fremont did not request leave to amend its Complaint during the extended discovery period.  It was not until April 21, 2006, that

Fremont filed its motion to amend the Complaint, approximately five months after the extended deadline for filing motions to amend expired. Fremont provides no explanation why it did not seek to amend its Complaint before the Scheduling Order's deadline or prior to April 21, 2006. Judge Mahan's comments at the June 7, 2006 hearing on cross-motions for summary judgment regarding whether seeking leave to amend Fremont's Complaint was necessary do not bolster Fremont's position because at the time Judge Mahan made these comments Fremont had already missed the deadline for filing amended pleadings by six months without any explanation why the proposed amendment was untimely. This Court finds that Fremont is required to seek leave to modify the Scheduling Order and to amend its Complaint to assert a claim for breach of fiduciary duty. Fremont did not do so in a timely manner.

This is not a case where Fremont could not have met the Scheduling Order deadline to amend its Complaint. Fremont had ample opportunity to conduct discovery and to move to amend its Complaint before the Scheduling Order's deadline. Because Fremont has not met the good cause standard under Rule 16, the Court need not examine whether Fremont's amendment is proper under Rule 15(a). The Court therefore will deny Fremont's motion to amend its complaint.

**B. Motion to Supplement**

Fremont seeks to supplement its Complaint with allegations "concerning the Koniver assignment to describe a subsequent, primary assignment of rights or claims by Koniver to Fremont." (Pl.'s Mot. for Leave to File Supplemental & First Am. Compl. at 3.) Fremont argues this subsequent Amended and Restated Assignment of Rights and Claims ("Amended Assignment"), signed on July 31, 2006, relates to Koniver's rights against U.S. Development, Koniver's rights against Bailey and Beckley, and Koniver's rights to the Letter of Credit Proceeds. Defendants argue the Court should not allow Fremont to supplement its Complaint because discovery already has closed and supplementation would

10

unduly delay the proceedings, prejudice Defendants, and require reopening discovery.

Under Rule 15(d), "[u]pon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." District courts have broad discretion to allow supplemental pleadings. Keith v. Volpe, 858 F.2d 467, 473 (9th Cir. 1988). "The rule is a tool of judicial economy and convenience." Id. Supplementation enables "a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." Id. (citation omitted). Supplementation is therefore favored and should be granted "[u]nless undue prejudice to the opposing party will result." Id.; LaSalvia v. United Dairymen of Ariz., 804 F.2d 1113, 1119 (9th Cir. 1986).

The Court, in its discretion, will grant Fremont's motion to supplement its Complaint to add allegations concerning the Amended Assignment. The United States Court of Appeals for the Ninth Circuit has not addressed whether a party moving to supplement its complaint must meet the good cause standard under Rule 16 to modify the scheduling order if the motion to supplement is filed after the scheduling order's deadline for amending the complaint. At least one court has answered the question affirmatively. See McGrotha v. Fed Ex Ground Package Sys., Inc., 2007 WL 640457, *2 (M.D. Ga. 2007) (Slip Copy) (stating "[i]f a motion to supplement is filed within the time prescribed by the scheduling order, a court's evaluation of whether supplementation is proper is guided by Rule 15(a)'s 'freely given' standard. When a motion to supplement is filed after the scheduling order's deadline, however, a party must first demonstrate good cause under Rule 16(b) before a court can consider whether supplementation is proper under Rule 15(d).") (internal quotations omitted). Unlike motions to amend, however, Rule 16's plain language does not require courts to set a deadline for filing a motion to supplement and the parties in

this case did not set such a deadline in their Scheduling Order.

Even if Rule 16 applies, Fremont has demonstrated the requisite diligence to satisfy the good cause standard. Fremont entered into the Amended Assignment with Koniver on July 31, 2006. (Affidavit of Bert Haboucha ["Haboucha Aff.," Doc. #193], Ex. A.) Fremont filed the present motion to supplement the complaint on September 5, 2006. Fremont's filing of its motion to supplement approximately one month after it executed the Amended Assignment demonstrates sufficient diligence to satisfy Rule 16's good cause standard.

In addition, Defendants have not demonstrated Fremont's supplemental allegations will prejudice Defendants. Moreover, allowing Fremont to supplement its Complaint will not cause undue delay. Fremont's proposed supplemental allegations do not allege a new cause of action or seek additional relief. Instead, Fremont seeks to supplement its Complaint with allegations concerning an Amended Assignment relating to a final court judgment. Permitting Fremont to supplement its Complaint will also promote judicial economy and convenience because the Court will be able to avoid the cost and time of trying a separate action based on the Amended Assignment. The Court therefore will grant Fremont's motion to supplement its Complaint.

**C. Additional Discovery**

Defendants request that in the event the Court grants Fremont's motion to supplement or amend its Complaint, discovery be reopened. Defendants' request for additional discovery, however, centers on issues pertaining to Fremont's proposed amendment of a breach of fiduciary duty claim, which the Court will deny. Thus, it is unclear if, and how much, additional discovery Defendants are seeking in relation to Fremont's supplemental allegations. To the extent Defendants seek additional discovery with respect to Fremont's supplemental allegations, the request will be granted for a period of sixty (60) days from the date of this Order.

## III.  CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff Fremont Investment & Loan's Motion for Leave to File Supplemental and First Amended Complaint (Doc. #210) is hereby GRANTED in part and DENIED in part. The Motion is granted with respect to Fremont's supplemental allegations regarding the Amended Assignment. The Motion is denied in all other respects. Plaintiff Fremont has ten (10) days from the date of this Order to file its Supplemental Complaint. Defendants have ten (10) days from the date Fremont files its Supplemental Complaint to file an answer.

IT IS FURTHER ORDERED that the parties shall have sixty (60) days from the date of this Order within which to conduct limited discovery with respect to Fremont's supplemental allegations.

IT IS FURTHER ORDERED that at the close of the sixty additional days of limited discovery, the parties shall have thirty (30) days to file any further dispositive motions. If no dispositive motions are pending on the date set for filing dispositive motions, the parties shall submit a Joint Pretrial Order no later than thirty (30) days thereafter. In the event dispositive motions are pending on the dispositive motion cutoff date, the parties shall file the Joint Pretrial Order no later than thirty (30) days after a decision on the pending dispositive motions.

DATED:   April 20, 2007.

_____
PHILIP M. PRO
United States District Judge